**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
---------------------------------------------------------------X
Uber Driver Partner Emery

                                       Plaintiff,

                 -against-                    Jury Trial Yes ☑  No ☐

**1 –** Uber Technologies Inc. ("Uber") And Its Subsidiaries

**2 –** Rasier LLC, A Subsidiary of Uber Technologies Inc.

**3 –** Uber Rider "Dinely", Rider On Uber Trip ID # 0d6a11cc-8797-42a1-a61a-b4c33625d04a (Rider Screen Name Dinely, 01/11/20 11:03 PM).

**4 –** Uber Rider "Taji" and her Friend, Black Skin Color Female females", Riders On Uber Trip ID # 9d9c9201-08ad-4370-acc8-452ab30dee93 (Rider Screen Name: Taji, 01/20/20 1:35 AM)

**5 –** Uber rider "James", Picked Up In Belmar Area of The  Jersey Shore

**6 –** Uber's Investigation Team And Managers Thereof (In Personal Or Official Capacity With Uber)

**7 -** Uber's Critical Safety Response Team And Managers Thereof (In Personal Or Official Capacity With Uber)

**8 –** Uber Driver Support Team And Managers Thereof (In Personal Or Official Capacity With Uber)

**10 –** Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management (In Personal Or Official Capacity With Uber)

                                   Defendants,
---------------------------------------------------------------X

      Plaintiff, Uber Driver Partner Emery, owner of the vehicle and driver on Uber trips ID # "0d6a11cc-8797-42a1-a61a-b4c33625d04a" (Rider Screen Name Dinely, 01/11/20 11:03 PM, **See EXHIBIT A**) and "9d9c9201-08ad-4370-acc8-

452ab30dee93" (Rider Screen Name: "Taji", 01/20/20 1:35 AM, **See EXHIBIT B**), on his own behalf and by way of this Complaint against the Defendants states as follows:

### A. THE PARTIES

#### 1) The Plaintiff

**1.** The Plaintiff is a citizen of the State of New Jersey.

**2.** The Plaintiff  Uber Driver had an active Uber Driver Partner account from about August 2016 to January 2020 when his account was suddenly deactivated following the Plaintiff's report to Uber that the Plaintiff had been sexually harassed by Uber riders during trips.

**3.** The Plaintiff address is 86 Bayard Street, P.O. Box # 381, New Brunswick, NJ 08903

#### 2) Uber Technologies Inc. ("Uber")

**4.** Uber Technologies Inc. ("Uber") is the parent company of Rasier LLC.

**5.** Uber Technologies Inc's main is a citizen of the State of California where it has its headquarter and main place of business.

**6.** It address is 1455 Market St., Ste. 400,  San Francisco, CA 94103.

#### 3) Rasier LLC, A Subsidiary of Uber Technologies Inc.

**7.** Rasier LLC is a subsidiary of Uber Technologies, Inc. ("Uber").

**8.**     Rasier LLC provides lead generation to independent providers of rideshare or peer-to-peer (collectively, "P2P") passenger transportation services using the Uber Services.

**9.**     The Uber Services enable an authorized transportation provider to seek, receive and fulfill requests for transportation services from an authorized user of Uber's mobile applications.

**10.**     In the year 2016, Rasier LLC  entered into a contract/agreement with the Plaintiff for the purpose of accessing and using/providing/supporting the Uber Services (See **EXHIBIT C**).

**11.**     On January 22, 2020 Rasier LLC sent an e-mail to the Plaintiff to inform the Plaintiff that the contract/agreement between the Plaintiff and Rasier LLC was terminated and the Plaintiff's Uber Driver Account suddenly deactivated after the Plaintiff reported that he had been sexually harassed during trips with Uber riders.

### 4) Uber Rider "*Dinely*", Rider On Uber Trip ID # 0d6a11cc-8797-42a1-a61a-b4c33625d04a (Rider Screen Name "Dinely", 01/11/20 11:03 PM)

**12.**     Uber rider Dinely is a female.

**13.**     Uber Rider Dinely is most likely Mexican, Latin, or Hispanic ancestry.

**14.**     Uber Rider Dinely is most likely a citizen of the State of New Jersey, residing in an Apartment complex named Harbor Front Villas, a private community located in the city of Elizabeth Port, New Jersey.

**15.** Uber Rider Dinely was transported by the Plaintiff in Plaintiff's vehicle on Uber Trip ID # 0d6a11cc-8797-42a1-a61a-b4c33625d04a (Rider Screen Name "Dinely", 01/11/20 11:03 PM).

**16.** The Uber Trip ID # 0d6a11cc-8797-42a1-a61a-b4c33625d04a (Rider Screen Name Dinely, 01/11/20 11:03 PM) was from Newark Airport Terminal C Passenger Pick Up # 6 to Elizabeth Port, New Jersey.

**17.** The Plaintiff does not currently have the exact house number for Uber Rider Dinely because Uber automatically removed that address from the trip Record; the Plaintiff will therefore attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

### 5) Uber Rider "Taji" And Her Friend, Black Skin Color Female, Riders On Uber Trip ID # 9d9c9201-08ad-4370-acc8-452ab30dee93 (Rider Screen Name: Taji, 01/20/20 1:35 AM)

**18.** Uber riders Taji and her Friend are female.

**19.** Uber Riders Taji and her Friend are Black skin color African Americans.

**20.** Uber Riders Taji and her Friend are most likely citizens of the State of New Jersey, residing in a family house on Pierce St, Newark, NJ 07103.

**21.** Uber Riders Taji and her Friend were transported by the Plaintiff in Plaintiff's vehicle on Uber Trip ID # 9d9c9201-08ad-4370-acc8-452ab30dee93 (Rider Screen Name: "Taji", 01/20/20 1:35 AM).

22.     Uber Trip ID # 9d9c9201-08ad-4370-acc8-452ab30dee93 (Rider Screen Name: "Taji", 01/20/20 1:35 AM) was from the front of a bar on Hollywood Ave, Hillside, NJ 07205 to a residential area at Pierce St, Newark, NJ 07103.

23.     The Plaintiff does not currently have the exact house number for Riders Taji and her Friend because Uber automatically removed that address from the trip Record, therefore the Plaintiff will attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

### 6) Uber Rider "James", A Young Caucasian Male, Age In The 20s or 30s, Picked Up And Driven By The Plaintiff From Belmar Area of The Jersey Shore  To A Trailer Park House # x23, A Few Miles From The Shore

24.     Uber James is a Male Caucasian.

25.     The Plaintiff has no idea about the Citizenship of Uber Rider James.

26.     The Plaintiff does not at the moment remember what Uber Rider James Trip ID was, except that the trip occurred during summer in a morning of the year 2017.

27.     The trip started from Belmar area shore point and was going few miles away to a trailer park homes where James told the Plaintiff he had an appointment with a sexual partner of the same gender, much older than him.

28.     It was an early morning trip during summer 2017.

29.      Uber Rider's James' trip  was the Plaintiff's first experience of being explicitly sexually harassed by an Uber Rider.

**30.** The Plaintiff thought on that first incident that it was just a random occurrence, and also Plaintiff was not aware of any Uber structure or place where to report such incidents at the time.

**31.** The Plaintiff does not currently have the address of Uber Rider James; therefore, the Plaintiff will attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

### 7) Uber's Investigation Team And Managers Thereof (In personal Capacity And In Capacity With Uber)

**32.** Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Uber's Investigation Team and Managers thereof is a specialized team   or an independent contractor in charge of investigating incidents reported to Uber by Riders or Drivers.

**33.** Upon information provided by a Unit or an independent contractor within Uber called Uber Driver Support Team, Uber's Investigation Team and the Managers thereof made the Decision on 01/22/2020 to terminate the Plaintiff's contract/agreement   with Uber and to deactivate the Plaintiff's Uber Driver Application/Account following the Plaintiff's report that he had been sexually harassed on Uber trips.

**34.** The Plaintiff does not currently have the address of Uber's Investigation Team and Managers thereof, therefore the Plaintiff will attempt to serve complaint

and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

### 8)  Uber's Critical Safety Response Team And Managers Thereof (In personal Capacity And In Capacity With Uber)

**35.**    Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Uber's Critical Safety Response Team and Managers thereof is a specialized team or an independent contractor within Uber in charge of taking in incidents reported to Uber by Riders or Drivers.

**36.**    Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Uber's Critical Safety Response Team and Managers thereof aided and abetted the Decision on 01/22/2020 to terminate the Plaintiff's contract/agreement  with Uber and to deactivate the Plaintiff's Uber Driver Application/Account following the Plaintiff's report that he had been sexually harassed on Uber trips.

**37.**    The Plaintiff does not currently have the address of Uber's Critical Safety Response Team and Managers thereof, therefore the Plaintiff will attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400, San Francisco, CA 94103

### 9) Uber Driver Support Team And Managers Thereof (In personal Capacity And In Capacity With Uber)

**38.** Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Uber's Driver Support Team and Managers thereof is a specialized team within Uber in charge of communicating with Uber Drivers.

**39.** Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Uber's Driver Support Team and Managers thereof aided and abetted the Decision on 01/22/2020 to terminate the Plaintiff's contract/agreement  with Uber and to deactivate the Plaintiff's Uber Driver Application/Account following the Plaintiff's report that he had been sexually harassed on Uber trips.

**40.** The Plaintiff does not currently have the address of Uber's Driver Support Team and Managers thereof, therefore the Plaintiff will attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

### 10)    Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management (In Personal Capacity And In Capacity With Uber)

**41.** Upon information provided by a Unit or an Independent Contractor within Uber called Uber Driver Support Team, Dara Khosrowshahi is Uber's CEO  and along with Uber's Senior Management, aided and abetted the Decision on

01/22/2020 to terminate the Plaintiff's contract/agreement  with Uber and to deactivate the Plaintiff's Uber Driver Application/account following the Plaintiff's report that he had been sexually harassed on Uber trips.

42.   The Plaintiff does not currently have the address of Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management, therefore the Plaintiff will attempt to serve complaint and summons on Uber Technologies Inc. at 1455 Market St., Ste. 400,  San Francisco, CA 94103.

## B. JURISDICTION AND PROCEDURAL HISTORY

43.   The Plaintiff's primarily alleges sexual harassment and hostile work environment brought upon the Plaintiff by the Defendants during the Plaintiff's exercise of his job as a driver in his community in the State if New Jersey.

44.   Sexual Harassment and Hostile Work Environment are cognizable Title VII claims and New Jersey Civil Rights Laws.

45.   The Plaintiff initially filed charges with the Equal Employment Opportunity Commission ("EEOC") in Newark, New Jersey.

46.   On 01/30/2020, the EEOC granted/issued a Notice of Rights to Suit (See **EXHIBIT D**) to the Plaintiff, following Defendants' failure to provide the EEOC investigation with information and records they  had/kept and which would have corroborated the Plaintiff's allegations.

47.     Uber and its co-defendants did not disclose to the EEOC the information Uber's investigation had collected from Uber riders during the investigation of sexual harassment alleged to have occurred on trips alleged herein.

48.     This lawsuit was commenced within the 90 days period granted by the EEOC following the issuance of a Notice of Rights to sue.

49.     Because this lawsuit alleges and states a claim of Sexual Harassment and Hostile Work Environment under Title VII and is supported by an EEOC Notice of Rights to Sue, the Complaint is therefore a Federal Question pursuant to 28 U.S.C. §1331.

50.     Furthermore, Uber's Agreement Arbitration Clause does not apply to claims of Title VII Sexual Harassment and related hostile work environment.

51.     The facts alleged in support of this complaint took place in the State of New Jersey.

52.     In view of all the above the US District Court for the District of New Jersey has federal question jurisdiction over this complaint and is the Proper venue.

### C. STATEMENT OF MATERIAL FACTS

**1) The Trip With Uber Rider "James", A Young Caucasian Male, Picked Up And Driven By The Plaintiff From Belmar Area of The Jersey Shore To A Trailer Park House # 23 or 123, A Few Miles From The Shore Point**

53.     The Plaintiff was working at Jersey Shore on a morning when Uber dispatched the Plaintiff to pick up a passenger named James.

54.    The Pick-up address was at or nearby Belmar Shore Point.

55.    Uber Rider James boarded the vehicle and sat in the passenger front seat to the right of the Plaintiff driver.

56.    As soon as the Plaintiff took off, Uber rider James said to the Plaintiff "*can I see your crotch*?"

57.    The Plaintiff responded by asking him what he meant by "*crotch*".

58.    Uber Rider James told the Plaintiff that he meant Plaintiff's "*Penis*".

59.    The Plaintiff asked him why he wanted to see the Plaintiff's "*crotch*"

60.    Uber Rider James then asked the Plaintiff's how long the Plaintiff's "*penis*" was.

61.    The Plaintiff responded that he had not measured his penis.

62.    Uber Rider James then said to pull over so that he could measure the Plaintiff' penis.

63.    The Plaintiff then asked him whether he had a meter with him.

64.    He then said that he was going to measure the Plaintiff's Penis in his mouth.

65.    The Plaintiff then asked him how he could measure the Plaintiff's penis in his mouth.

66.    Uber Rider James then said that the Plaintiff would put his penis in his mouth and then he will be able to tell the Plaintiff how long the Plaintiff's penis was.

**67.** The Plaintiff immediately felt extremely uncomfortable and contemplate whether to stop and ask him to exit the vehicle.

**68.** But the Plaintiff feared that the situation could escalate into physical violence and the Plaintiff continued to drive while watching for his moves.

**69.** The Plaintiff attempted to change the conversation by asking him where he was going.

**70.** He said that he was going to meet a date he had met through a gay/ homosexual Application.

**71.** The trip was just a few miles from Belmar shore point, but the GPS lead the Plaintiff and rider Uber rider James to a dead end as destination for that trip.

**72.** The Plaintiff then asked Uber rider James to call his date for additional instructions as to how to reach his destination.

**73.** James said that he did not have his date phone number.

**74.** The Plaintiff asked James how then he had been communicating with his date.

**75.** He said that they only communicated through a gay/homosexual application.

**76.** He then said that his date had told him that there was a Shoprite store nearby where they will meet and that the Place was like trailer park homes.

**77.** The Plaintiff and James then circled around a few minutes and saw a ShopRite store and finally a place that looked like a trailer home park.

**78.** When the Plaintiff and James arrived at that destination, the Plaintiff saw that there was a man standing in front on one of the homes, and James then said that was his date standing on the porch.

**79.** The man standing on the porch was a Caucasian, apparently in his 60s.

**80.** Uber Rider James then asked the Plaintiff to come into the house with them.

**81.** The Plaintiff declined and left.

**82.** The Plaintiff told this incident to a number of Uber Riders and Uber Drivers who happened to ask the Plaintiff about weird trips.

**83.** This trip was the Plaintiff's first experience with sexual harassment on Uber trips and had since left the Plaintiff continuously feeling profoundly mentally and emotionally distressed, insecure, and unsafe during the exercise of his job as a driver in his community.

### 2) Uber Trip ID# "0d6a11cc-8797-42a1-a61a-b4c33625d04a" (Rider Screen Name Dinely, 01/11/20 11:03 PM, See EXHIBIT A)

**84.** Uber had dispatched the Plaintiff to pick up a rider from Newark Airport terminal C, Passenger Pick up Six.

**85.** The rider's screen named was "Dinely".

**86.** The rider boarded the vehicle and sat in the back seat on the right side.

**87.** The passenger was a female dressed in dark clothing, apparently an employee working at the airport.

**88.**    Her appearance was that of a Latino and her destination was Elizabeth Port, New Jersey, just a few miles from the airport.

**89.**    About three minutes into the trip, the Plaintiff heard signals from his smart phone and noticed that the Driver Application was acting as if the passenger was modifying her destination.

**90.**    The rider then told the Plaintiff that she wanted the Plaintiff to make three stops before the destination she initially entered into the App as destination.

**91.**    The Plaintiff responded that he was not sure he would want to make so many stops, and the Plaintiff then asked  her which were those stops she had in mind.

**92.**    She then said one of them was a bank.

**93.**    The Plaintiff then responded to her that he would accommodate her for one stop only.

**94.**    The rider immediately became upset and then told the Plaintiff that the Plaintiff should not be an Uber Driver and that the Plaintiff should go have his own business.

**95.**    The Plaintiff again offered Uber rider Dinely to accommodate one stop on the way to the destination she initially entered into the Application.

**96.**    The rider then responded by saying many disrespectful things to the Plaintiff and then told the Plaintiff that it was going to be three stops or nothing.

**97.**   Plaintiff then told her that he would therefore drive her to her initial destination.

**98.**   Then rider Dinely repeatedly told the Plaintiff that she would see to it that the Plaintiff will never work for Uber again.

**99.**   The Plaintiff then drove her to her destination, an apartment complex in the City of Elizabeth Port, NJ.

**100.**   While Uber rider Dinely was exiting the vehicle, she again shouted at the Plaintiff that she will see to it that the Plaintiff will never work for Uber again.

**101.**   The Plaintiff then submitted a report through the Uber Driver Application to report that the rider had been rude.

**102.**   About 20 minutes later, while the Plaintiff was in the Newark airport queue again waiting for an assignment when Uber sent an electronic message saying that the Plaintiff's account was put on hold and that an investigation will take place.

**103.**   The Plaintiff then call Uber Driver Support phone number, which then confirmed that the Plaintiff's account had been put on hold to investigate an incident report from a rider.

**104.**   The Plaintiff asked who the rider was and what had been said in the report.

**105.**   Uber Driver Support declined to inform the Plaintiff of the content of the report, saying that the Uber's Investigation Team And Managers Thereof was the only Unit that will disclose the information to the Plaintiff.

**106.**  10 days went by and despite numerous follow up calls from the Plaintiff, nobody from Uber's Investigation Team And Managers Thereof contacted the Plaintiff.

**107.**  On January 10, 2020, a person from the Uber's Investigation Team contacted the Plaintiff by phone and introduced himself as Uber investigation team member.

**108.**  The Plaintiff then asked him about why the Plaintiff's account was put on hold shortly after the Plaintiff had reported that Uber rider Dinely had been rude.

**109.**  The Plaintiff informed the Uber investigator that the Plaintiff believed that Rider Dinely was the one who might have made some kind of report, although the Plaintiff had no idea what she might have said, except if it was that the Plaintiff declined to take her to the multiples stops she wanted.

**110.**  The Uber investigator then asked the Plaintiff whether the Plaintiff had sex or sexual conversation with  a rider during a trip.

**111.**  Then Plaintiff responded that he never had sex or sexual conversation with any  rider including Uber rider Dinely.

**112.**  The Uber investigator then informed the Plaintiff that they will make a decision.

**113.**  After a couple of hours, the Plaintiff's Driver account was reactivated.

**114.**   On this incident, the Plaintiff had been severely distressed for over 10 days because the Plaintiff had no idea what could have caused Uber to suddenly put the Plaintiff's account on hold.

**115.**   Upon information and belief, Uber Rider Dinely had some sexual intends or fantasies about the Plaintiff when she asked the Plaintiff to take her to several stops and she became frustrated and disappointed when the Plaintiff rejected her advances.

**116.**   Upon information and belief, Uber and its co-defendants including Uber riders James, Dinely, Taji and her friend, Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management expected the Plaintiff to accommodate Uber rider Dinely for her sexual intents/fantasies and were not pleased with the fact that Plaintiff did not comply/obey/submit.

### 3)  Uber Trip ID # "9d9c9201-08ad-4370-acc8-452ab30dee93" (Rider Screen Name: Taji, 01/20/20 1:35 AM, See EXHIBIT B),

**117.**   Uber had dispatched the Plaintiff to pick up a rider with screen name "Taji".

**118.**   The Plaintiff arrived at the Pick-up location, which was across from a bar in Hillside, NJ, and two females, African American boarded the vehicle and sat at the back.

**119.**   The trip destination was Newark, NJ.

**120.**   About a minute into the trip, the Plaintiff overheard Uber riders Taji and her friend talking about needing more air.

**121.**   The Plaintiff then inquired about the issue and adjusted the air conditioning, both air temperature and speed in the vehicle.

**122.**   Uber rider Taji then asked if the Plaintiff did not want to have sex.

**123.**   The Plaintiff quickly remembered the incidents with riders James and rider Dinely and was shocked that at the question directed at the Plaintiff and Plaintiff remained silent.

**124.**   Uber Riders Taji and her friend then said to the Plaintiff that they liked and enjoyed having "*black big dick in their pussies*".

**125.**   They then told the Plaintiff that they knew that black men keep liquors in their homes and that they wanted the Plaintiff to take them to his home and give them liquor and have sex with them in their "*pussies*" because they liked and enjoyed "*black big dick in their pussies*".

**126.**   The Plaintiff was shocked and continued to remain silent hoping that they will stop but it only got worse.

**127.**   They told the Plaintiff that they repeatedly told the Plaintiff that they wanted the Plaintiff in their "*pussies*" and they said so many more sexual things to the Plaintiff, as if attempting to cause to feel sexually aroused and to get a sexual erection for them.

128.   The Plaintiff remained silent and one of them asked the Plaintiff why the Plaintiff did not want to have sex with them and whether the Plaintiff was married.

129.   As the Plaintiff remained silent they then told the Plaintiff that they knew that Uber expected the Plaintiff to respond to them and to their advances and that since the Plaintiff had not responded to their advances, they will give the Plaintiff a one-star rating and will ask Uber to refund of their fare.

130.   The Plaintiff then responded to them and politely informed them their sexual advances to a Driver was improper and that Plaintiff wanted them to stop.

131.   They became furious at the Plaintiff and cussed Plaintiff with many more sexual and cuss words.

132.   The Plaintiff finally arrived at their destination and they got off while insulting and cussing the Plaintiff with many more sexual and cuss words.

133.   Upon completing their trip, the Plaintiff immediately called Uber Driver Support unit to report the incident.

134.   The Uber Driver support unit then connected the Plaintiff with another unit called Uber's Critical Safety Response Team.

135.   The Plaintiff then told the Uber's Critical Safety Response Team what had happened during this trip.

136.   Uber's Critical Safety Response Team then informed the Plaintiff that they will investigate the incident.

**137.**  Two days later, while the Plaintiff was completing a trip, the Plaintiff received an electronic notification that the Plaintiff's Uber Driver account had been deactivated for inappropriate behavior/conduct.

**138.**  The Plaintiff made several follow-up calls and e-mails to inquire what the inappropriate behavior/conduct was unless it was about the Plaintiff's having reported sexual harassment during Uber trips, but as of today Uber and its co-defendants have not disclosed to the Plaintiff what else the inappropriate behavior/conduct was or when such an inappropriate conduct occurred.

**139.**  The Plaintiff also submitted communications to Uber Senior Management and to Uber CEO Dara Khosrowshahi, but the Uber Driver Support Unit and Uber's Driver investigation Team confirmed to the Plaintiff that they had all approved the deactivation of the Plaintiff's Driver account for inappropriate behavior/conduct which was/is nothing else other than the Plaintiff having reported and complained about sexual harassment and hostile work environment during Uber trips with Uber riders.

**D.      CAUSES OF ACTION**

## COUNT I

### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT BY CREATED, EXECUTED, AND/OR PERPERTRATED BY UBER AND UBER RIDERS IN VIOLATION OF FEDERAL TITLE VII AND OF NEW JERSEY CIVIL RGHTS STATUTES/LAWS

**140.** The Plaintiff repeats and re-alleges the allegations above as if the same were set forth at length herein.

**141.** While the Plaintiff was performing his contractual duties with Uber to transport Uber riders assigned to be transported by the Plaintiff in his own vehicle, Uber Riders James, Dinely, Taji and her friend openly and/or covertly had and/or expressed sexual  fantasies/advances/schemes toward the Plaintiff.

**142.** For example, Uber rider James openly asked the Plaintiff to show him Plaintiff's "*crotch*" and  he also told the Plaintiff that he would measure the Plaintiff's "*crotch*" in/with his mouth.

**143.** Uber riders Taji and her friend told the Plaintiff that they wanted the Plaintiff in their "pussies"   and that the Plaintiff had a "*big dick*".

**144.** Uber rider Dinely asked the Plaintiff to take her to three stops although such stops had not been included her initial trip request, and she became angry at the Plaintiff and swore that she will see to it that the Plaintiff will no longer work for Uber because the Plaintiff had not submitted to her and she could not fulfil any sexual schemes on the Plaintiff.

**145.** Uber Riders James, Dinely, Taji and her friend sexual fantasies/advances/schemes toward the Plaintiff made the Plaintiff uncomfortable, unsafe, and insecure on his job as an Uber driver in the Plaintiff's community.

**146.** Upon information and belief, defendants including James, Dinely, Taji and her friend, Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management expected that the Plaintiff as an Uber Driver had to submit to the sexual fantasies/advances/schemes of Uber riders.

**147.** Upon information and belief, defendants including James, Dinely, Taji and her friend, Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management counted and credited it as an inappropriate behavior the fact the Plaintiff refused to submit to Uber riders' sexual fantasies/advances/schemes of Uber riders James, Dinely, Taji and her friend.

**148.** Defendants including James', Dinely's, Taji's and her friend's, Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi's (Uber's CEO)  and Uber's Senior Management's expectations that the Plaintiff as an Uber

Driver had to submit to the sexual fantasies/advances/schemes of Uber riders was sexual harassment in the Plaintiff's job and workplace and created a hostile work environment for the Plaintiff as a driver.

**COUNT II**

**REATALIATION AGAINST PLAINTIFF FOR HIS HAVING REPORTED ALLEGED  SEXUAL HARASSMENT BY UBER RIDERS IN VIOLATION OF FEDERAL TITLE VII STATUTES AND OF NEW JERSEY CIVIL RGHTS STATUTES/LAWS**

**149.**   The Plaintiff repeats and re-alleges the allegations above as if the same were set forth at length herein.

**150.**   While the Plaintiff was performing his contractual duties with Uber to transport Uber riders assigned to be transported by the Plaintiff in his own vehicle, Uber Riders James, Dinely, Taji and her friend openly and/or covertly had and/or expressed sexual  fantasies/advances/schemes toward the Plaintiff.

**151.**   For example, Uber rider James openly asked the Plaintiff to show him Plaintiff's "*crotch*" and   he also told the Plaintiff that he would measure the Plaintiff's "*crotch*" in/with his mouth.

**152.**   Uber riders Taji and her friend told the Plaintiff that they wanted the Plaintiff in their "*pussies*"   and that the Plaintiff had "*big dick*".

**153.**   Uber rider Dinely asked the Plaintiff to take her to three stops although such stops had not been included her initial trip request, but she became angry at the Plaintiff and swore that she will see to it that the Plaintiff will no longer work for

Uber because the Plaintiff had refused to submit to her and she could not therefore fulfil any sexual schemes on the Plaintiff.

**154.** Uber Riders James, Dinely, Taji and her friend sexual fantasies/advances/schemes toward the Plaintiff made the Plaintiff uncomfortable, unsafe, and insecure on his job as an Uber driver in the Plaintiff's community.

**155.** The Plaintiff complained to Uber about sexual harassment and the hostile work environment incidents that occurred during trips with Uber riders including riders Dinely, Taji and her friend, but in response Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management retaliated by suddenly deactivating the Plaintiff's driver account although the Plaintiff had no conduct identified in Uber's Code of conduct as qualifying for sudden deactivation.

## COUNT IV

### AIDING AND ABETTING SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT UPON THE PLAINTIFF IN VIOLATION OF FEDERAL TITLE VII AND OF NEW JERSEY CIVIL RGHTS LAWS/STATUTES

**156.** The Plaintiff repeats and re-alleges the allegations above as if the same were set forth at length herein.

**157.** While the Plaintiff was performing his contractual duties with Uber to transport Uber riders assigned to be transported by the Plaintiff in his own vehicle,

Uber Riders James, Dinely, Taji and her friend openly and/or covertly had and/or expressed sexual fantasies/advances/schemes toward the Plaintiff.

158.  For example, Uber rider James openly asked the Plaintiff to show him Plaintiff's "*crotch*" and he also told the Plaintiff that he would measure the Plaintiff's "crotch" in/with his mouth.

159.  Uber riders Taji and her friend told the Plaintiff that they wanted the Plaintiff in their "*pussies*" and that the Plaintiff had "*big dick*".

160.  Uber rider Dinely asked the Plaintiff to take her to three stops although such stops had not been included her initial trip request, but she became angry at the Plaintiff and swore that she will see to it that the Plaintiff will no longer work for Uber because she could not fulfil any sexual schemes on the Plaintiff.

161.  Uber Riders James, Dinely, Taji and her friend sexual fantasies/advances/schemes toward the Plaintiff made the Plaintiff uncomfortable, unsafe, and insecure on his job as an Uber driver in the Plaintiff's community.

162.  The Plaintiff complained to Uber about sexual harassment and the hostile work environment incidents that occurred during trips with Uber riders including riders Dinely, Taji and her friend, but in response Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO) and Uber's Senior Management retaliated by suddenly deactivating the Plaintiff's driver account

although the Plaintiff had no conduct identified in Uber's Code of conduct as qualifying for sudden deactivation.

**163.**   In spite of numerous appeals to Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)   and Uber's Senior Management they have refused to reactivate the Plaintiff's driver account.

**COUNT IV**

**INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS**

**164.**   The Plaintiff repeats and re-alleges the allegations above as if the same were set forth at length herein.

**165.**   While the Plaintiff was performing his contractual duties with Uber to transport Uber riders assigned to be transported by the Plaintiff in his own vehicle, Uber Riders James, Dinely, Taji and her friend openly and/or covertly had and/or expressed sexual  fantasies/advances/schemes toward the Plaintiff.

**166.**   For example, Uber rider James openly asked the Plaintiff to show him Plaintiff's "crotch" and  he also told the Plaintiff that he would measure the Plaintiff's crotch with his mouth.

**167.**   Uber riders Taji and her friend told the Plaintiff that they wanted the Plaintiff in their "pussies"  and that the Plaintiff had "big dick".

168.   Uber rider Dinely asked the Plaintiff to take her to three stops although such stops had not been included her initial trip request, but she became angry at the Plaintiff and swore that she will see to it that the Plaintiff will no longer work for Uber because she could not fulfil any sexual schemes on the Plaintiff.

169.   Uber   Riders   James,   Dinely,   Taji   and   her   friend   sexual fantasies/advances/schemes toward the Plaintiff made the Plaintiff uncomfortable, unsafe, and insecure on his job as an Uber driver in the Plaintiff's community.

170.   The Plaintiff complained to Uber about sexual harassment and the hostile work environment incidents that occurred during trips with Uber riders including riders Dinely, Taji and her friend, but in response Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)  and Uber's Senior Management retaliated by suddenly deactivating the Plaintiff's driver account although the Plaintiff had no conduct identified in Uber's Code of conduct as qualifying for sudden deactivation.

171.   In spite of numerous appeals to Uber's Investigation Team and Managers thereof, Uber's Critical Safety Response Team, Uber's Driver Support Team and Managers thereof, Dara Khosrowshahi (Uber's CEO)   and Uber's Senior Management, they have refused to reactivate the Plaintiff's driver account.

**172.**   The multiple incidents and experiences with sexual harassment on Uber trips alleged herein had since left the Plaintiff continuously feeling profoundly mentally and emotionally distressed, insecure, and unsafe during the exercise of his job as a driver in his community.

**173.**   The Defendants' actions resulted in economic losses to the Plaintiff and had also severely caused severe mental and emotional distress to the Plaintiff.

### E. DAMAGES

**174.**   As a proximate results of the Defendants' actions, the Plaintiff suffered economic losses, and severe mental and emotional distresses.

**175.**   Wherefore, the Plaintiff seeks: a) Compensatory damages; b) Punitive Damages; c) Reactivation:  d) and any other relief as to the court is deemed just and fair.

### F.  DEMAND FOR TRIAL BY JURY

The Plaintiff hereby respectfully demands a trial by jury as to all claims and issues so triable.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 27th Day of April 2020.

> **By: /S/** *Uber Driver Partner Emery*
> 86 Bayard Street, P. O. Box # 381
> New Brunswick, NJ 08903