*NOT FOR PUBLICATON*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UBER DRIVER PARTNER EMERY,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Civil Action No. 3:20-cv-05156-FLW-ZNQ<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

This matter arises from an employment relationship. *Pro se* Plaintiff Uber Driver Partner Emery[1] sues Defendant Uber Technologies, Inc.,[2] alleging that Uber discriminated against him by deactivating his account following three rides. Emery claims that Uber violated 42 U.S.C. § 1981, the New Jersey Law Against Discrimination ("NJLAD"), and state contract and tort law. Before the Court is Uber's Motion to Dismiss. Uber contends that Emery's Amended Complaint violates

---

[1] Emery has filed his Amended Complaint under a pseudonym, contrary to Fed. R. Civ. P. 10(a), which requires parties to identify themselves in their pleadings. *Id.* Rule 10(a) "illustrates 'the principle that judicial proceedings, civil as well as criminal, are to be conducted in public.'" *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2012) (quoting *Doe b. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). A plaintiff may proceed anonymously only in "exceptional cases," such as when he "sufficiently alleges . . . a reasonable fear of severe harm from litigating without a pseudonym" that outweighs the "public's strong interest in an open litigation process." *Id.* at 408-09. Embarrassment or economic harm is not enough. *See Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008). Emery never moved to proceed as "Uber Driver Partner Emery" in this matter, but because I am dismissing his Amended Complaint in its entirety, I need not address the Rule 10(a) flaw in his pleading. Emery is well-advised that he must show cause to proceed anonymously in any future litigation.

[2] Emery names the following defendants: Uber, subsidiary Raiser LLC, Uber's investigations team, critical safety response team, and driver support team, Uber's CEO, Uber's senior management, and three Uber riders. References herein to "Uber" include all defendants but the riders. While the riders have not joined Uber's dismissal motion, because Emery has not properly served them or made an effort to obtain their contact information, they are dismissed under Fed. R. Civ. P. 4(m) without prejudice.

Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule and fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Uber's dismissal motion is **GRANTED** and Emery's Amended Complaint is **DISMISSED**.

## I.   FACTUAL AND PROCEDURAL HISTORY[3]

Emery drove for Uber from August 2016 to January 2020. *See* Am. Compl., ¶ 86. The parties' contractual relationship began in December 2015, when they entered a Technology Services Agreement ("TSA"). *Id.*, Ex. C.[4] The TSA classified Emery as an independent contractor. *Id.* § 13.1 ("[T]he relationship between the parties under the Agreement is solely that of independent contractors."); *id.* § 2.4 ("[Uber] does not, and shall not be deemed to, direct or control you generally or in your performance under this Agreement."). Pursuant to its terms, Emery could use the Uber App to obtain leads for rides and split the fares as determined by a formula. *Id.* §§ 4.1-4.2. The TSA also provided that "[Uber] is not responsible for the actions or inactions of a User in relation to you, your activities or your Vehicle," *id.* § 2.3, and that the company could change the parties' fare-split ratio at any time. *Id.* § 4.2.

Emery's Amended Complaint describes three interactions with riders, two of which are sexually explicit and race-adjacent. *See* Am. Compl., ¶¶ 17-36. Sometime in 2017, "Uber Rider/Customer/User James" repeatedly asked "to have an 'Uber experience of a long and big black crotch.'" *Id.* ¶¶ 86-96. Emery declined James' requests, completed the trip, and did not report the ride to Uber. Three years later, on January 11, 2020, "Uber Rider/Customer/User Dinely"

---

3   For the purposes of this motion, I accept as true all allegations in the Amended Complaint and view them in the light most favorable to Emery, the non-moving party. *See DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 215 (3d Cir. 2007).

4   On a dismissal motion, I may consider not only the allegations in a complaint but also any "exhibits attached to [it]," such as the TSA, which Emery has included as Exhibit C. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

demanded that Emery make additional stops on the way her destination. *Id.* ¶ 138. Emery declined, at which point Dinely purportedly said that she "very often" asked "'black Uber drivers' to take her places and they would just comply without asking her any questions." *Id.* ¶ 142. Emery completed Dinely's trip, apparently without making any extra stops, and reported her to Uber as "rude." *Id.* ¶ 159. Uber placed Emery's account on hold pending an investigation. *Id.* ¶ 160. When a member of "Uber's Investigation Team" called about Emery's report, he again stated that Dinely was "rude." *Id.* ¶¶ 165-66. A few hours later, Uber reactivated Emery's account. *Id.* ¶ 171. Finally, on January 20, 2020, "Uber Riders/Customers/Users Taji and her friend" allegedly made various race-specific remarks about Emery's genitals. *Id.* ¶ 184-85, 196. As with Dinely, Emery reported this ride to Uber, which "informed" him that it would "investigate." *Id.* ¶¶ 198-201. Emery's Amended Complaint does not contain any information about the nature or extent of his report or Uber's investigation except that, two days later, Uber deactivated his account. *Id.* ¶ 202.

On April 28, 2020, Emery filed the instant suit. *See* ECF No. 1. Uber moved to dismiss the Complaint on July 17, 2020. Emery filed the operative Amended Complaint ten days later containing new theories of liability against multiple defendants and covering 442 paragraphs over 94 pages. *See* ECF No. 8. Construing the Amended Complaint liberally, I discern the following causes of action. Count I asserts three violations of 42 U.S.C. § 1981: disparate treatment for deactivating Emery's account but not the accounts of "white citizens," Am. Compl., ¶ 238, a hostile work environment for failing to act after Emery "reported and complained about Unlawful Discriminations [sic] [and] sexual harassment . . . on Uber trips, *id.* ¶ 204, and retaliation for "reject[ing] . . . improper Demands/Requests and sexual fantasies/advances/schemes." *Id.* ¶ 209.

Count II asserts a violation of the NJLAD, *see* N.J.S.A. § 10:5-12(l), for terminating the TSA and refusing to contract with Emery on the basis of his race. *See* Am. Compl., ¶¶ 275, 277-

79. Count III asserts that certain individuals at Uber, such as the CEO, senior management, and unnamed employees who are members of various company teams, violated a similar statutory provision, *see* N.J.S.A. § 10:5-12(l), for "aiding and abetting the Decision on 01/22/2020 to terminate [Emery's] contract/agreement with Uber and to deactive [his] Uber Driver Application/account," the riders' harassment, and the hostile work environment. *Id.* ¶¶ 46, 314. Count IV asserts breach of contract claims under Section 2.3 of the TSA for "fund[ing], reward[ing] and [endorsing]" the "improper conduct" of riders, *id.* ¶¶ 322-30, and Section 4.1 of the TSA for unilaterally raising the fare-split, which "reduced [Emery's] ability [to] negotiate a different fare" and receive gratuities. *Id.* ¶¶ 337-38. Count V asserts breach of the covenant of good faith and fair dealing for the same. *Id.* ¶¶ 347-55.

Count VI asserts negligence and gross negligence, on the grounds that Uber had a duty "by reason of their intimate knowledge of [Emery's] hard work, and of the [TSA] and Guidelines that governed [his] relationship with [the company]," *id.* ¶ 363, which it breached by "behaving and acting contrary to the 'spirit' of the [TSA] . . . and contrary to the Uber Community Guidelines," deactivating Emery's account, thereby causing "loss of income, emotional distress, and pain." *Id.* ¶ 364. Finally, Count VII asserts tortious interference with a contract and prospective economic advantage against Uber, its employees, and the riders. *Id.* Uber contends in response that Emery fails to state a claim for relief under any cause of action. *See* Def. Br., at 5-24.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 8(a)(2), a complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861

F.2d 40, 42 (2d Cir. 1988). "The statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.* A court may dismiss an action for "Rule 8 noncompliance." *See Kamdem-Ouaffo v. Huczko*, 810 Fed. App'x. 82, 84-85 (3d Cir. 2020).

A court may also dismiss an action under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.

2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Emery has filed his Amended Complaint *pro se*, I construe it liberally and in the interests of doing substantial justice. *See, e.g.*, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003) ("apply[ing] the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name," on a motion to dismiss) (citations omitted). Even so, I am not required to credit "bald assertions" or "legal conclusions" simply because Emery is proceeding *pro se*. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A *pro se* complaint may just as readily be dismissed if it sets forth allegations which cannot be construed to supply facts supporting a claim for relief. *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

## III.   DISCUSSION[5]

### A. Count I: Disparate Treatment, Hostile Work Environment, and Retaliation Under § 1981

In Count I, Emery asserts that Uber violated 42 U.S.C. § 1981 by deactivating his account but not the accounts of "white citizens." Am. Compl., ¶ 238. Relatedly, Emery asserts that Uber

---

[5]    Although Emery's Amended Complaint is long, *see supra*, I am able to discern the various causes of action, the facts supporting them, and which facts pertain to which defendants. As such, I will not dismiss it under Fed. R. Civ. P. 8(a)(2) for failing to comply with the "short and plain statement" rule.

created a hostile work environment by failing to act after he "reported and complained about Unlawful Discriminations [sic] [and] sexual harassment . . . on Uber trips." *Id.* ¶ 204. Emery also asserts that Uber retaliated against him for "reject[ing] . . . improper Demands/Requests and sexual fantasies/advances/schemes" from riders. *Id.* ¶ 209.

i.   Disparate Treatment

The gist of Emery's disparate treatment claim is that, because he refused to comply with riders' race-adjacent sexual demands, Uber deactivated his account, but did not do so for similarly-situated white drivers, whom the company did not expect to "submit" to such demands because of their race. *See id.* at ¶¶ 82, 84, 238, 275. Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). This includes "independent contractor relationship[s]" such as the one established by the TSA. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

To state a claim for disparate treatment under § 1981, a plaintiff must plausibly allege: "(1) that [he] is a member of a racial minority; (2) [an] intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *Brown v. Philip Morris Inc.*, 250 F. 3d 789, 797 (3d Cir. 2001). A plaintiff must offer only "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of discrimination," but need not make out a *prima facie* case. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016); *Fisher v. Catholic Social Services of Archdiocese of Phila.*, No. 18-04653, 2019 WL 3731688, at *4 (E.D. Pa. Aug. 8, 2019) (concluding same); *Dreibelbis v. Cnty of Berks*, 438 F. Supp. 3d 304, 313-15 (E.D. Pa. 2020) (describing this as "facial plausibility"); *see also Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017).

Because Emery is black, *see* Am. Compl., ¶¶ 2-3, and § 1981 encompasses the TSA, *see Brown*, 581 F.3d at 181, his dispute with Uber centers on the second element: intent to discriminate. A plaintiff may allege intentional discrimination by, *inter alia*, "comparator evidence, evidence of similar racial discrimination [against] other employees, or direct evidence of discrimination from statements or actions by [the defendant] suggesting racial animus." *Golod v. Bank of America Corp.*, 403 Fed. App'x. 699, 702 n.2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-12 (2002)); *Varughese v. Robert Wood Johnson Med. Sch.*, No. 16-02828, 2017 WL 4270523, at * 6 (D.N.J. Sept. 26, 2017).

Accepting as true all facts in the Amended Complaint, Emery has not pled a cognizable claim for relief under § 1981, as he offers "next to nothing" to suggest that Uber mistreated him because of his race.[6] *Doe v. Triangle Doughnuts, LLC*, 471 F. Supp. 3d 115, 131 (E.D. Pa. 2020). Starting with direct evidence, Emery fails to allege any statements or actions from Uber which could conceivably suffice as "overt or explicit" racial animus, or as "reflect[ing] discriminatory bias." *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002); *Varughese*, 2017 WL 4270523, at *6 ("[Emery] does not, for example, allege any comments by Defendants evincing racial animus."). Neither does Emery allege any facts suggesting that Uber terminated its TSA with other black drivers under like circumstances. *See Doe v. Sizewise Rentals, LLC*, 530 Fed. App'x. 171, 174 (3d Cir. 2013) (affirming dismissal of § 1981 claim because plaintiff's bald assertions of "racial plots" which "persecute[ed]" plaintiff "along with other Hispanics and Blacks" were "devoid . . . of factual allegations that . . . defendants acted with any racially discriminatory animus").

---

6    Because Emery's disparate treatment allegations are so conclusory and bare-bones, and because he has already amended once after Uber moved to dismiss his original Complaint, it does not appear that he could allege any set of facts that would "raise a reasonable expectation that discovery will reveal evidence of . . . discrimination," such that further leave to amend would be warranted. *See infra*.

To the extent that Emery's disparate treatment claim depends on facts at all, it is a vague comparison with white Uber drivers. To allege discrimination on that basis, "comparator employees must be similarly situated in all relevant respects," taking into account "factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 Fed. App'x. 879, 882 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1645 (2012). "In determining whether employees are similarly situated, the court is required to undertake a fact-intensive inquiry." *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 431 (W.D. Pa. 2014) (quoting *Monaco v. Am. Gen. Assurance Co.*, 359 F. 3d 296, 306 (3d Cir. 2004)). Factors include whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 Fed. App'x. 190, 195 (3d Cir. 2011).

Emery offers no factual averments to bolster his "threadbare" legal conclusion that Uber singled him out because of his race. *See Iqbal*, 556 U.S. at 678. The only comparators Emery alleges are nameless "white drivers" who remain with Uber despite refusing to "submit" to riders' "sexual fantasies/advances/schemes," a bald assertion that does not contain any facts about such drivers, whether they ever experienced harassment from riders, or whether they are similarly situated in any relevant respect. That cannot form the basis of a disparate treatment claim. *Accord Golud*, 403 Fed. App'x at 702 (affirming dismissal under § 1981 because plaintiff presented no factual allegations supporting claim that non-Jewish doctors received promotions); *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *15 (D.N.J. Apr. 21, 2014) (dismissing claim under § 1981 because "it asserts nothing more than conclusory allegations of discrimination"); *Mojica v. Advance Auto Parts, Inc.*, No. 15-1418, 2016 WL 107844, at *5 (E.D.

Pa. Jan. 11, 2016) (dismissing claim under § 1981 because "[t]he only comparators Plaintiff purports to identify with respect to any of these situation[s] are unidentified 'white guys'"); *Ferrell v. Harvard Indus., Inc.*, No. 00-2707, 2001 WL 1301461, at *17 (E.D. Pa. Oct. 23, 2001) (dismissing plaintiff's claim because he "vaguely alleges that others were insubordinate or out of their work areas without similar consequences but names no specific individuals he believes were similarly-situated but disparately treated"); *Fisher*, 2019 WL 3731688, at *5 (dismissing plaintiff's claim because he "makes bare allegations that 'other similarly situated white employees' were given preferential treatment, favored, or received less discipline for conduct that was 'far more severe,'" without "identifying any comparators or how they were similarly situated").

In short, Emery does not allege facts connecting Uber's decision to deactivate his account to his race, nor facts connecting the company's decision not to deactivate similarly-situated white drivers' accounts to their race. *Accord Morton v. Arnold*, 618 Fed. App'x. 136, 141-42 (3d Cir. 2015) (affirming dismissal of § 1981 claim where complaint did not "contain facts supporting an inference that [plaintiff] was terminated on the basis of race" or "intimate[] why [plaintiff] believe[d] that race motivated the [defendant's] actions"); *Guevara v. Elizabeth Public Schools*, No. 18-15728, 2019 WL 3244592, at *3 (D.N.J. July 18, 2019) ("[B]eyond bare assertions and vague legal conclusions, the Amended Complaint does not contain sufficient facts to support an inference that Defendants intentionally discriminated against her based on her race.").

ii.   Hostile Work Environment

Emery also asserts that Uber created a hostile work environment by failing to act after he complained about certain riders.[7] *See* Am. Compl., ¶¶ 189, 201. Although the rights guaranteed by

---

7      Emery's Amended Complaint alleges various sexually-charged remarks that potentially perpetuate racial stereotypes and/or trade on racial characteristics. It is unclear whether that would, on its own, constitute a form of race-based discrimination. To that extent, it is unclear whether Emery may bring a hostile work environment claim under § 1981, which is strictly an anti-racism statute. *Compare Saint*

§ 1981 and Title VII "are separate, distinct, and independent," *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975); *Hamilton v. City of Philadelphia*, No. 18-05184, 2019 WL 4220899, at *4 (E.D. Pa. Sept. 5, 2019), "[a] hostile work environment claim under Section 1981 is analyzed in the same manner as under Title VII." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 653 (E.D. Pa. 2012) (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)), *aff'd*, 565 Fed. App'x. 88, 93 (3d Cir. 2014). To state a claim for hostile work environment, a plaintiff must plausibly allege that: "(1) [he] suffered intentional discrimination because of race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected [him], (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) there is a basis for employer liability, such as *respondeat superior*." *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 477 (E.D. Pa. 2019).

An employer "may be liable under Title VII [and thus Section 1981] for the harassing conduct of third parties," such as the Uber riders here, "if the employer was aware of the conduct and failed to take reasonable remedial action in response." *Johnson v. Bally's Atlantic City*, 147 Fed. App'x. 284, 286 (3d Cir. 2005) (alleging "racist comments by casino customers") (citing *Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998) ("An employer who

---

*Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."), *with Montana v. Amstar Corp.*, 502 F. Supp. 295, 297 (E.D. Pa. 1980) ("Section 1981 is of no aid to plaintiff's claim of sexual harassment since sex discrimination is not cognizable thereunder."). However, because I must construe the Amended Complaint in a light most favorable to Emery, I will assume that his allegations here, farfetched though they are, allow a hostile work environment claim based on race, and that certain riders' remarks were motivated substantially by Emery's membership in a protected class. *Cf. Cannon v. Correctional Med. Servs.*, 726 F. Supp. 380, 393 (D. Del. 2010) (stating that plaintiff "must demonstrate that race played a substantial role in the harassment and she would have been treated more favorably had she been Caucasian" to state a claim for race-based discrimination); *Daughtry v. Family Dollar Stores, Inc.*, 819 F. Supp. 2d 393, 402 (D. Del. 2011) (construing various allegations as unrelated to race); *Senador v. Zober Industries, Inc.*, No. 07-4144, 2009 WL 1152168, at *9 (E.D. Pa. Apr. 28, 2009) ("[M]istreatment that is not motivated by the plaintiff's protected class does not create a hostile work environment.").

condones or tolerates the creation of [a hostile work] environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment.")); *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) ("An employer is not subject to a lesser standard simply because an anonymous actor is responsible for the [racist] conduct.").

Like all Counts, Emery points to three rides with customers over three years, which he summarily concludes show a racially-hostile work environment. None suffices as a matter of law to support his claim for relief upon closer inspection. Emery first describes the ride with "Uber Rider/Customer/User James," who allegedly made racially-tinged remarks about Emery's genitals while proposing that they have sex. *See* Am. Compl., ¶¶ 86-131, 226. This ride cannot establish a hostile work environment because Emery never reported it to Uber, and there is no basis for employer liability in that sense. *Accord Johnson-Harris v. AmiQuip Cranes Rental, LLC*, No. 14-767, 2015 WL 4113542, at *10 (E.D. Pa. July 8, 2015) ("[B]ecause [plaintiff] made no complaints . . . the Defendants cannot be held to have the knowledge of harassing conduct required to establish the existence of *respondeat superior* liability.").

Emery next describes the ride with "Uber Rider/Customer/User Dinely," who apparently asked Emery to make additional stops on the way to her destination, stated that "'[other] black Uber Drivers' [] take her places and [] just comply without asking her any questions," and threatened to "see to it that you never work for Uber again." *See* Am. Compl., ¶¶ 138, 142, 148. While Emery informed Uber about this ride, *id.* ¶¶ 159-60, Emery only reported that Dinely was "rude," *id.* ¶ 159, which also cannot establish a hostile work environment because it does not implicate any basis for employer liability. *Accord Johnson-Harris*, 2015 WL 4113542, at *10 ("If an employee's complaints do not refer to offensive behavior based on race, an employer does not

have constructive knowledge of harassment."); *Konin*, 175 F.3d at 294-95 ("[T]here is simply no evidence that [Uber] had knowledge that the rude language was [race] specific."). Dinely's ride also fails as a matter of law to support Emery's claim because her remarks, at most, were offensive. *Accord Norris v. Securitas Sec. Services USA, Inc.*, No. 10-06809, 2011 WL 3206484, at *4 (D.N.J. July 27, 2011) (holding that a reference to "black nannies [ ] all over the place cleaning" does not "constitute pervasive or regular discrimination" but a "mere offensive utterance[]"); *Henson v. United States Foodservice,* No.11-1809, 2013 WL 6080359, at *13 (D.N.J. Nov. 19, 2013) (holding that racially-insensitive jokes about a black employee's interests, genitals, and diet were not "sufficiently severe or pervasive," even if they were "certainly . . . offensive").

The only (arguably) racist ride Emery reported to Uber, and on which his hostile work environment claim could in theory be based, is with "Uber Riders/Customers/Users Taji and her friend," who supposedly asked Emery to have sex, characterized his genitals in a race-specific manner, and "insult[ed] [him] . . . with many more [graphic] sexual and cuss words." *See* Am. Compl., ¶¶ 181-96. Assuming that Taji directed her remarks at Emery specifically because of his race, *see supra*, note 6, that she would have treated a white driver less egregiously, and that an "isolated" instance of discriminatory conduct is enough, if severe, to establish a hostile work environment, *Castleberry*, 863 F.3d at 265, Taji's ride still does not suffice.

To decide whether a work environment is hostile, I must consider the "totality of the circumstances," *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 664 (E.D. Pa. 2019); *Suri v. Foxx*, 69 F. Supp. 3d 467, 480 (D.N.J. 2014), and the nature of Uber's business is highly relevant. Uber rides are *necessarily* isolated and sporadic events about which Uber cannot know details unless a driver files a report containing such information. This means that Uber could not have known about Taji's demeaning

13

behavior until *after* Emery reported her, assuming that other drivers had not repeatedly reported Taji for similar behavior, which Emery does not allege. Uber also did not know that other *riders* had made race-specific remarks to Emery before Taji allegedly did so. *See supra*. To that extent, Uber lacked notice of any racially discriminatory conduct, could not have taken remedial action, and there is no basis for employer liability with respect to Taji's ride. *See, e.g.*, *Cooper v. Cate*, No. 10-899, 2012 WL 1669353, at *6 (E.D. Ca. May 11, 2012) (holding that employer liability created by customer conduct is "possible," but in such cases, plaintiff is "subjected to comments and acts" over a long period of time through "multiple discriminatory occurrences," which is "materially different" than an "isolated incident[]," as here). If I accepted Emery's theory, then every Uber ride during which a rider behaves like Taji, even if for the very first time against a driver who had never filed a discrimination-related report, might expose Uber to suit from a driver, which would expand liability for customer conduct under § 1981 and Title VII well beyond what the Third Circuit likely intended in *Bally's Atlantic City*.

      iii.   <u>Retaliation</u>

Emery finally asserts that Uber "retaliated against" him because he reported riders after "reject[ing] [their] improper Demands/Requests and sexual fantasies/advances/schemes." *See* Am. Compl., ¶ 209. Section 1981 encompasses workplace retaliation. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 444-55 (2008). To state a retaliation claim, a plaintiff must plausibly allege that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Hutchins v. United Parcel Service, Inc.*, 197 Fed. App'x. 152, 156 (3d Cir. 2006); *McGhee v. Thomas Jefferson Univ. Hosp.*, No. 12-2919, 2013 WL 4663541, at *4 (E.D. Pa. Aug. 29, 2013).

Protected activity consists of "formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management," objecting to discrimination in an industry or society generally, *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995), and expressing "opposition to unlawful discrimination." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). Regardless of the "medium of conveyance," what is most significant is a plaintiff's "message." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

Emery's retaliation claim fails on its face because he does not allege that he ever complained to Uber about racial discrimination or race-based harassment: he did not report James' ride at all, simply said Dinely was "rude," and provides no indication that he described Taji's conduct as racially-motivated or rooted in animus.[8] *See Coleman v. Delaney's Cape May, LLC*, No. 17-2581, 2019 WL 6873758, at *8 (D.N.J. Dec. 17, 2019) (dismissing retaliation claim because plaintiff "never complained" of "offensive conduct" to supervisors). The mere fact that Emery reported Dinely and Taji cannot, *ipso facto*, raise the inference that his reports were protected activity within the meaning of § 1981. *See Davis v. City of Newark*, 417 Fed. App'x. 201, 202 (3d Cir. 2011) ("Not every complaint or report entitles its author to protection from retaliation."); *Barber*, 68 F.3d at 701-02 (holding that even "a general complaint of unfair treatment does not translate into a charge of illegal [race] discrimination" if it does not suggest an unlawful reason for it); *Slagle v. County of Clarion*, 435 F.3d 262, 267 (3d Cir. 2006) (holding that plaintiff did not engage in protected activity because he did not specifically complain that his employer violated Title VII); *Gharzouzi v. Northwestern Human Services of Penn.*, 225 F. Supp.

---

8       As with his disparate treatment claim, because Emery does not allege that he ever informed Uber of any race-based conduct on the part of any rider, or reported discrimination explicitly or implicitly, despite amending his Complaint in response to Uber's first dismissal motion, it does not appear that he could allege any set of facts sufficient to defeat dismissal or warrant leave to amend again. *See infra*.

2d 514, 540 (E.D. Pa. 2002) ("The complaint must specifically mention the plaintiff's belief that he/she was discriminated against on account of his/her membership in some protected class."); *cf. Dodd v. Septa*, No. 06-4213, 2008 WL 2902618, at *13 (E.D. Pa. July 24, 2008) (finding that plaintiff implicitly connected the unfair treatment to his race because he complained that he was harassed because of his hair and stated that his hair style is popular in the black community). Based on Emery's Amended Complaint, at most he reported "disrespectful" rider behavior. *Senador*, 2009 WL 1152168, at *12 (concluding same). Count I is therefore **DISMISSED**.

### B. Count II: New Jersey Law Against Discrimination

In Count II, Emery asserts that Uber violated N.J.S.A. § 10:5-12(l), a provision of the NJLAD, by maintaining "different standards/views" for black versus white drivers. *See* Am. Compl., ¶ 276. Specifically, Uber "never deactivated 'white citizens' who refused to submit to the improper Demands/Requests and sexual fantasies/advances/schemes of Uber Riders/Customers/Users," *id.* ¶ 275, but expected Emery to submit to such demands "because [he] is a black person." *Id.* ¶ 277.

New Jersey enacted the NJLAD "to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993). N.J.S.A. § 10:5-12(l) makes it unlawful for any person to "refuse to . . . contract with . . . any other person on the basis of race." *Id.*; *J.T.'s Tire Serv. Inc., v. United Rentals North America, Inc.*, 411 N.J. Super. 236, 240-42 (App. Div. 2010); *Nahas v. Shore Medical Ctr.*, No. 13-6537, 2015 WL 3448021, at *8 (D.N.J. May 29, 2015).

Emery's claim that Uber violated N.J.S.A. § 10:5-12(l) by expecting him to submit to sexual demands from riders—in the course of his relationship with the company, under the then-

operative TSA—does not "provide a basis for liability," because N.J.S.A. § 10:5-12(l) does not

cover discrimination "during the ongoing execution of a contract." *Rowan v. Hartford Plaza Ltd.,*

*LP.*, No. 0107-11, 2013 WL 1350095, at *10 (App. Div. 2013); *Naik v. 7-Eleven, Inc.*, No. 13-

4578, 2015 WL 3844792, at *11 (D.N.J. Aug. 5, 2014). As such, this LAD claim must fail. *Accord*

*7 Eleven Inc v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *7 (D.N.J. May 31, 2016) ("Because

the NJLAD does not cover discrimination during the ongoing execution of a contract, Mr. Sodhi's

NJLAD claim fails as a matter of law."), *aff'd*, 706 Fed. App'x. 777 (3d Cir. 2017). Moreover,

while N.J.S.A. § 10:5-12(l) applies if a party terminates a contract, *see Rubin v. Chilton Memorial*

*Hospital,* 359 N.J. Super. 105, 111-12 (App. Div. 2003); *A. & M. Wholesale Hardware Co., Inc.*

*v. Circor Instrumentation Technologies, Inc.*, No. 13-0475, 2014 WL 714938, at *5 (D.N.J. Feb.

24, 2014), and Uber ended the TSA, Emery fails to connect that action to any discriminatory

purpose, so this LAD claim must also fail. Count II is therefore **DISMISSED**.[9]

### *C.  Count III: Aiding and Abetting*

---

9      Construing Emery's Amended Complaint liberally, to the extent that he means to assert a retaliation claim under N.J.S.A. § 10:5-12(d), his allegations "are substantially similar to those contained in [his] § 1981 retaliation claim, and the requirements of [the] NJLAD [ ] are similar, if not more exacting," so that claim would fail. *Nahas*, 2015 WL 3448021, at *8; *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 622 (D.N.J. 2014); *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623 (1995) (articulating § 10:5-12(d) test mirroring § 1981 test); *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354 (2007) (holding that plaintiff also bears the burden of proving that he made the complaint giving rise to the retaliation reasonably and in good faith). To the extent that Emery means to assert a hostile work environment claim under N.J.S.A. § 10:5-12(l), New Jersey law "limits [such] a cause of action . . . to claims of *quid pro quo* sexual harassment," meaning an explicit refusal to continue to contract unless plaintiff "submits to the sexual demands" of defendant. *Axakowsky v. NFL Productions Co.*, No. 17-4730, 2018 WL 5961923, at 7-8 (D.N.J. Nov. 14, 2018); *see also J.T.'s Tire*, 411 N.J. Super. at 241. Because Emery does not, and could not, assert that Uber conditioned the TSA on Emery's performing sexual acts with riders, this claim would also fail. Finally, to the extent that Emery means to assert a hostile work environment claim under N.J.S.A. § 10:5-12(a), his claim would fail for the reasons it failed under § 1981. *See Sgro v. Bloomberg L.P.*, 331 Fed. App'x. 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII."); *Verdin v. Weeks Marine Inc.*, 124 Fed. App'x. 92, 96 (3d Cir. 2005) ("[C]ourts utilize the same analysis for the merits of Title VII and Section 1981 claims."); *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD.").

In Count III, Emery asserts that various employees at Uber, chief among them the CEO, aided and abetted all of the discriminatory conduct in the Amended Complaint. *See* Am. Compl., ¶¶ 281, 314-15. Under N.J.S.A. § 10:5-12(e), it is unlawful "for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999). "[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008).

To state a claim for aiding and abetting, a plaintiff must plausibly allege that: "(1) the party whom the defendant aids [ ] performed a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time he provide[d] the assistance; [and] (3) the defendant [ ] knowingly and substantially assist[ed] the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004). In this regard, aiding and abetting liability is derivative: "[t]he NJLAD does not provide for individual liability . . . if the employer is not found liable." *Tourtellotte v. Eli Lilly & Co.*, 636 Fed. App'x. 831, 856 (3d Cir. 2016). Because employer and employee liability rise and fall together under the NJLAD, to the extent that Emery has failed to show that Uber committed any discriminatory conduct, his claims against its employees must also fail. *Accord Hanani v. New Jersey*, No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005) ("[A]n individual employee cannot be found liable for discrimination under the NJLAD unless the employer is first found liable."); *Harley*, 2017 WL 2779466, at *7 ("[S]ince the Court finds that the Complaint does not set forth plausible allegations as to the employer, the City, the aiding and abetting argument also fails as to the Individual Defendants."); *Gross v. City of New Jersey City*, No. 18-9802, 2019 WL 2120312, at *6 (D.N.J. May 15, 2019)

(concluding same); *Nahas*, 2015 WL 3448021, at *9 n.7 (concluding same). Count III is therefore **DISMISSED**.[10]

### D. Count IV: Breach of Contract

In Count IV, Emery asserts that Uber breached Sections 2.3 and 4.1 of the TSA. *See* Am. Comp., ¶¶ 322-34. To state a breach of contract claim, a plaintiff must plausibly allege: (1) the existence of a valid contract; (2) breach by defendant; (3) performance by plaintiff; and (4) damages. *Oswell v. Morgan Stanley Dean Witter & Co.*, No. 06-5814, 2007 WL 1756027, at *5 (D.N.J. June 18, 2007).

Emery first claims that Uber violated Section 2.3 of the TSA by funding, rewarding, endorsing, and conspiring with riders to file false reports after their trips and ultimately to deactivate Emery's account. *See* Am. Compl., ¶¶ 322-30. Section 2.3 provides that Uber is not responsible for riders' actions in relation to drivers, and that rides establish "a direct business relationship between" the driver and rider, not Uber. *Id.*, Ex. C. Construing Emery's Amended Complaint liberally, the only possible basis for his Section 2.3 claim is that Uber "partially" or "totally" refunded fares. *Id.* ¶ 327. But Emery does not explain how that could conceivably violate Section 2.3, which is essentially a liability waiver. The most relevant section is 4.3, which regulates fare adjustments. Yet, under Section 4.3, Uber "reserves the right to . . . cancel" fares "in the event

---

10      Construing this Count liberally as well, to the extent that Emery means to assert individual liability against Uber's employees under § 1981 rather than the NJLAD, *see Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), he must "plead the [employees'] personal involvement in the alleged discriminatory conduct at issue," *Douglas v. Nesbit*, No. 16-01836, 2017 WL 1021680, at *6 (M.D. Pa. Mar. 16, 2017), and allege that the employees "either intentionally caused the infringement of [his] § 1981 rights or authorized, directed, or participated in the alleged discriminatory conduct." *Rodrigues v. Motorworld Auto. Grp. Inc.*, No. 16-1674, 2017 WL 1036477, at *4 (M.D. Pa. Mar. 17, 2017). Far from alleging any facts that suggest personal involvement, Emery's Amended Complaint fails to establish that anyone at Uber even knew the race-specific nature of certain riders' conduct. So, a § 1981 claim based on individual liability would fail. *Accord Norris v. Securitas Sec. Servs. USA, Inc.*, No. 10-06809, 2011 WL 3206484, at *3 (D.N.J. July 27, 2011) ("Defendant cannot 'willfully and knowingly associate' itself with [the] alleged conduct if it has no knowledge of said conduct.").

of a User complaint," among other reasons. *Id.*, Ex. C. Of course, Uber agrees to exercise its discretion reasonably. But Emery does not allege any facts suggesting that Uber acted unreasonably by refunding fares from his account after riders complained about *him*.

Emery also claims that Uber violated Section 4.1 of the TSA by unilaterally raising the fare-split from 75%-25% to 60%-40%. *See* Am. Compl., ¶¶ 332-37. Section 4.1 regulates the manner in which Uber calculates fares, deducts predetermined expenses from a driver's account, such as vehicle financing, and remits payments. *Id.*, Ex. C. Emery states that Uber violated the TSA because Section 4.1 merely "recommends" a "pre-arranged" fare as a "default" around which a driver "shall always have the right" to negotiate. *Id.* This claim, too, fails. First, Emery incorrectly describes Section 4.1, which provides that drivers may "charge a fare that is less" or "lower" than the "pre-arranged" fare, but certainly not one that is higher. *Id.* Regardless, Emery overlooks Section 4.2, under which Uber "reserves the right to change the Fare Calculation at any time in Company's discretion based upon local market factors, and Company will provide you with notice." *Id.* "Continued use of the Uber Services after any such change shall constitute your consent to such change." *Id.* Emery admittedly completed new trips after Uber changed the fare-split, and does not allege that Uber failed to provide him with notice of the adjustment, so it is unclear how he could plead breach of contract under Sections 4.1 and 4.2. Count IV is therefore **DISMISSED**.

### E. Count V: Breach of the Covenant of Good Faith and Fair Dealing

In Count V, Emery asserts that Uber breached the covenant of good faith and fair dealing for the same reasons as it breached the TSA. *See* Am. Compl., ¶¶ 347-55. All contracts in New Jersey contain an implied covenant of good faith and fair dealing, *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000), which ensures that "neither party shall do

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997). To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must plausibly allege that a party to a contract "act[ed] in bad faith or engage[d] in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane*, 228 F.3d at 288. "[B]ad motive is 'essential.'" *Vasaturo Bros. v. Alimenta Trading-USA*, No. 09-2049, 2011 WL 3022440 (D.N.J. July 22, 2011).

While the "covenant may fill in the gaps to give efficacy to a contract as written when some terms of the contract are not specific," *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 WL 1731695, at *7 (D.N.J. May 2, 2017), "where the terms of the parties' contract are clear, [it] will not override the contract's express language." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 271-72 (3d Cir. 2004). For that reason, a plaintiff "may not sustain a separate cause of action for breach of the covenant of good faith and fair dealing based on the same conduct that has given rise to [his] breach of contract claims and where the terms of their contract are clear." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013); *Elite Pers., Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015) (concluding same). Emery has not alleged a breach of the covenant of good faith and fair dealing beyond the breach of contract. The underlying conduct giving rise to each claim is identical. Neither has he alleged that the TSA is ambiguous in any relevant respect. Count V is therefore **DISMISSED**.

### F.  Count VI: Negligence and Gross Negligence

In Count VI, Emery asserts negligence and gross negligence. Specifically, he contends that Uber owed him a duty "by reason of their intimate knowledge of [his] hard work, and of the

Agreements and Guidelines that governed [his] relationship with Uber," but breached that duty by acting contrary to the "spirit" of the TSA and the company's community guidelines," which caused "loss of income, emotional distress, and pain and suffering." *See* Am. Compl., at ¶¶ 363-64.

To state a negligence claim, a plaintiff must plausibly allege: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576 (2013); *Kamdem-Ouaffo v. Task Mgmt.*, No. 17-7506, 2018 WL 3360762, at *20 (D.N.J. July 9, 2018). Gross negligence differs only in degree. *Graddy v. Deutsche Bank*, No. 11-3038, 2013 WL 122655, at *3 n.1 (D.N.J. Mar. 25, 2013) (citing *Monaghan v. Holy Trinity Church*, 275 N.J. Super. 594, 599 (App. Div. 1994)). However, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002); *Skypala v. Mortg. Elec. Registration Sys. Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009). This means that the "mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." *Skypala*, 655 F. Supp. 2d at 460; *Saltiel*, 170 N.J. at 316-17. Emery's negligence claim is based solely on Uber's alleged breach of the TSA. Count VI is therefore **DISMISSED**.

### G. Count VII: Tortious Interference

Lastly, in Count VII, Emery asserts that Uber, its employees, and its riders tortiously interfered with the TSA and his prospective business by deactivating his account, refunding fares, filing reports against him, and the like. *See* Am. Compl., ¶¶ 380-83, 396-400. "Under New Jersey law, the elements of tortious interference with a contractual relationship claims and tortious interference with a prospective economic advantage claims are nearly identical." *A. & M. Wholesale Hardware*, 2014 WL 714938, at *8; *Kamdem-Ouaffo*, 2018 WL 3360762, at *22. To

state a claim for either, a plaintiff must plausibly allege: "(1) a protectable right, i.e., a contract [or prospective economic advantage]; [and] (2) intentional and malicious interference with a protectable right (3) that causes a loss with resulting damages." *A. & M. Wholesale Hardware*, 2014 WL 714938, at *8; *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989).

A tortious interference claim cannot, however, "be directed at a person or entity that is a party to the contract." *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 305 (D.N.J. 2007); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001); *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997), *aff'd*, 156 F.3d 1225 (3d Cir. 1998). It must instead be "directed against defendants who are not parties." *Am. Capital Acquisition Partners, LLC v. Fortigent, LLC*, No. 13-5571, 2014 WL 1210580, at *5 (D.N.J. Mar. 24, 2014). For a party cannot "breach" a contract and at once "induc[e]" its own breach. *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994); *Van Natta Mech. Corp. v. Di Staulo*, 277 N.J. Super. 175, 182 (App. Div. 1994) ("One cannot interfere with one's own economic relationship, since in such an instance the matter is governed by principles of contract law."). The same is true for tortious interference with prospective economic advantage. *Marrero v. Camden Cty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 478 (D.N.J. 2001).

Emery's claim against Uber fails as a matter of law because Uber entered into the TSA with Emery. *See Vargo v. Nat'l Exch. Carriers Ass'n, Inc.*, 376 N.J. Super. 364, 380 (App. Div. 2005) (rejecting plaintiff's tortious interference claim against his employer for terminating him). Emery's claim against Uber's employees also fails as a matter of law because they are presumed to be parties to the TSA by virtue of their employment relationship with Uber. *See Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 80 (App. Div. 2004) ("Inasmuch as plaintiffs and [corporate and individual employee] defendants were, at all times, parties to the corporate

relationship between PW and its clients, plaintiffs cannot maintain an action for tortious interference against defendants."). Emery's claim against Uber's riders further fails because he does not allege non-conclusory facts suggesting that any of them "intentionally and maliciously" interfered with his contract. The mere fact that they reported Emery to Uber and asked for/received refunded fares does not raise any such inference. Count VII is therefore **DISMISSED**.

### H.  Leave to Amend

Courts generally permit a curative amendment if a *pro se* complaint is dismissed under Rule 12(b)(6), unless leave would be futile. *See, e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). I decline to grant further leave here. First, it does not appear that any set of factual allegations can overcome the deficiencies Uber has identified. Second, all of Emery's claims fail as a matter of law in some respect. Finally, Emery has already amended once, in response to Uber's first dismissal motion, where Uber pointed out these very flaws in the context of Title VII, after which Emery essentially re-pled the same facts under § 1981. *Accord Credico v. CEO Idaho Nat'l Lab.*, 461 Fed. App'x. 78, 79 (3d Cir. 2012) ("[Plaintiff] offers nothing by way of explanation how, even if his outlandish claims were true, any [ ] rights are implicated."); *Jones v. Delaware Health*, No.17-1028, 2017 WL 6403016, at *1 n.2 (M.D. Pa. Sept. 11, 2017) ("Plaintiff's rambling and at times incomprehensible *pro se* complaint fails to state any articulable claim upon which relief could be granted.").

### IV.   CONCLUSION

Uber's Motion to Dismiss is **GRANTED** as to all Counts. Emery's Amended Complaint is **DISMISSED** with prejudice as to all Uber-related defendants and without prejudice as to the Uber riders pursuant to Fed. R. Civ. P. 4(m) for failure to serve.

**DATED**: March 12, 2021                                    /s/ Freda L. Wolfson
                                                                                U.S. Chief District Judge